IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TOMMIE HENDRICK, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24 CV 00867 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| CITY OF CHICAGO, *et al.* | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Defendant City of Chicago (hereinafter "Defendant City"), by and through its counsel, HINSHAW & CULBERTSON, LLP, and for its answer and affirmative defenses to Plaintiff's Complaint at Law, and Jury Demand, states as follows:

**INTRODUCTION**

This is a civil action seeking damages against defendants for committing acts under color of law, and depriving Plaintiff of rights secured by the Constitution and laws of the United States.

**ANSWER: Defendant City admits that Plaintiff brings a civil action for damages alleging deprivations of his Constitutional rights, and that the Defendant Officers acted under color of law at all relevant times, but denies any misconduct or wrongdoing.**

**JURISDICTION**

1. This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

**ANSWER: Defendant City admits that this action is purportedly brought in part under 42 U.S.C. Sec. 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution, but denies any misconduct or wrongdoing.**

2. The jurisdiction of this Court is invoked pursuant to the judicial code 28 U.S.C. § 1331 and 1343 (a); the Constitution of the United States.

**ANSWER: Defendant City admits that this Court has subject matter jurisdiction over Plaintiff's federal claim, but denies any misconduct or wrongdoing.**

3. Pendent jurisdiction as provided under 28 U.S.C. § 1367(a).

**ANSWER: Defendant City admits that this Court has jurisdiction over Plaintiff's state law claims, but denies any misconduct or wrongdoing.**

## PARTIES

4. Plaintiff TOMMIE HENDRICK, JR. is a citizen of the United States of America, who, at all times relevant, resided in Cook County, Illinois.

**ANSWER: Defendant City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

5. Defendants MICHAEL DONNELLY, #13784, RICHARD RODRIGUEZ, #12157, and JOSEPH VECCHIO, #14469, ("Defendant Officers") were, at the time of this occurrence, duly licensed Chicago Police Officers. They engaged in the conduct complained of in the course and scope of their employment and under color of law. They are sued in their individual capacities.

**ANSWER: Defendant City admits the Defendant Officers, at all relevant times, were duly licensed Chicago Police Officers and were acting in the course and scope of their employment and under color of law. Defendant City also admits they are sued in their individual capacity. Defendant City denies any remaining allegations contained in this paragraph and denies any misconduct or wrongdoing.**

6. Defendant CITY OF CHICAGO ("City") is a municipal corporation duly incorporated under the laws of the State of Illinois, and is the employer and principal of Defendant Officers.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

**FACTS**

7. Plaintiff Tommie Hendrick, Jr. was a 25-year-old student at Southern Illinois University where he majored in Graphic Design and minored in Cinematography.

**ANSWER: Defendant City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

8. On or around 7 August 2019, Tommie was standing with friends near Oak Street and Cambridge Avenue, in the area of the Cabrini Rowhouses when they noticed CPD Officers driving the wrong way down the street.

**ANSWER: Defendant City admits that on or around August 7, 2019, Plaintiff was in the area of W. Oak Street and N. Cambridge Avenue, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

9. Those officers pointed their guns at Tommie, threatened to kill him if he moved, and then began chasing another individual.

**ANSWER: Defendant City admits that at least one of the officers on scene engaged in a foot chase. Defendant City denies the remaining allegations contained in this paragraph truly and accurately set forth the facts and circumstances of the law enforcement officers' encounter with Plaintiff on August 7, 2019, and therefore denies the allegations in this paragraph.**

10. After Tommie began recording the police officers, they attacked him, knocking his phone out of his hand and hurling threats and epitaphs at him.

**ANSWER: Defendant City denies the allegations contained in this paragraph truly and accurately set forth the facts and circumstances of the law enforcement officers' encounter with Plaintiff on August 7, 2019, and therefore denies the allegations in this paragraph.**

11. Tommie sued the officers involved in that incident, and that case settled.

**ANSWER: Defendant City admits that Plaintiff sued law enforcement officers in relation to an August 7, 2019 incident, and that the lawsuit settled. Defendant City denies any misconduct or wrongdoing associated with the incident.**

84618\324457694.v2

12. Since then, Tommie has used his skills to document police abuse and harassment that is rampant in his neighborhood.

**ANSWER: Defendant City denies "police abuse and harassment . . . is rampant," and therefore denies the allegations contained in this paragraph.**

13. Consequently, he has become a target of police abuse and harassment.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

14. Defendants Donnelly and Rodriguez regularly spread false rumors throughout his neighborhood that he is a police informant, or snitch.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

15. Defendant Donnelly has called Tommie a snitch to his face; on another occasion, he also yelled it out of his police vehicle as he drove away. Defendant Rodriguez was present on these occasions.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

16. Because of Defendant Donnelly and Rodrigez's constant harassment, Tommie filed complaints with the Civilian Office of Police Accountability, that were then transferred to CPD Internal Affairs.

**ANSWER: Defendant City denies any "constant harassment," and therefore denies the allegations contained in this paragraph.**

17. On 21 December 2023, Tommie spoke with Internal Affairs about scheduling an interview regarding his allegations of abuse and harassment against Defendant Officers.

**ANSWER: Defendant City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

18. Then, on 26 December 2023, Tommie was sitting in the passenger seat of his girlfriend's vehicle when Defendant Officers seized them without a lawful basis.

**ANSWER: Defendant City denies the allegations contained this this paragraph.**

19. At the time Defendant Officers drove past the parked vehicle containing Plaintiff, all of its windows were rolled up.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

84618\324457694.v2

20. Defendant Officers, without reasonable and articulable suspicion, or any other lawful basis, seized the vehicle and initiated a traffic stop (although the car had never been moving).

**ANSWER: Defendant City denies the allegations contained this this paragraph.**

21. Defendant Vecchio approached the front driver's side while Defendant Rodriguez approached the front passenger side.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

22. Defendant Rodriguez warned Defendant Vecchio, "he's gonna record so watch your mouth. The guy in the front seat likes to record a lot. We got a beef last time because of him."

**ANSWER: Defendant City admits that Defendant Rodriquez informed Defendant Vecchio that Plaintiff was recording and that he instructed Defendant Vecchio to "watch your mouth." Defendant City denies that this is a complete and accurate recitation of Defendant Rodriquez's statements to Defendant Vecchio.**

23. Tommie, who was in the front passenger seat, had his window rolled up the entire time and, after seeing who was approaching, pulled out his cell phone to begin recording.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

24. Defendant Rodriguez then knocked on the front passenger window.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

25. Meanwhile, Defendant Vecchio never asked the driver for her license, registration, or proof of insurance.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

26. Instead, after shining his flashlight through the back driver's side window, Defendant Vecchio stated that he saw a gun holster.

**ANSWER: Defendant admits the allegations contained in this paragraph.**

27. It is not illegal to own a gun holster, and there was no gun visible or in the holster. Moreover, the driver of the vehicle was a properly licensed FOID and CCL holder.

**ANSWER: Defendant City admits that it is not illegal to own a gun holster and that no gun was visible or in the holster at the time it was identified. However, Defendant City is without**

5

**knowledge or information sufficient to form a belief as to the driver's FOID and CCL status at the time of the stop.**

    28. Defendant Donnelly then told the driver to "hop the fuck out of the car now" and began pulling on the driver's door handle.

**ANSWER: Defendant City admits the allegations in this paragraph.**

    29. Defendant Donnelly and Defendant Vecchio both unholstered their weapons and pointed them at the car.

**ANSWER: Defendant City admits the allegation in this paragraph but deny any misconduct or wrongdoing.**

    30. Defendant Rodriguez tried to open the front passenger side door, but it was locked. At this point, he had never given Mr. Hendrick any command.

**ANSWER: Defendant City denies the allegations in this paragraph.**

    31. Defendant Donnelly then told Defendant Vecchio to, "smash the fucking window." In response, Defendant Vecchio banged on the front driver's side window with his flashlight.

**ANSWER: Defendant City admits the allegations in this paragraph.**

    32. Defendant Officers, without a lawful basis, pointed their guns at all the car's occupants and ordered them to exit the vehicle.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

    33. Specifically, Defendant Rodriguez took a step back from the car, unholstered his weapon and pointed it at Mr. Hendrick, telling him to, "get out of the car, bro."

**ANSWER: Defendant City admits the allegations in this paragraph.**

    34. Mr. Hendrick yelled for his mother.

**ANSWER: Defendant City admits the allegations in this paragraph.**

    35. Mr. Hendrick then opened his door and stepped out of the vehicle with both hands raised; his cell phone was in his left hand.

**ANSWER: Defendant City admits the allegations in this paragraph.**

36. While Defendant Rodriguez held Plaintiff at gunpoint, he knocked the phone out of Tommie's hand; Defendant Vecchio then handcuffed Tommie.

**ANSWER: Defendant City denies that Defendant Rodriguez held Plaintiff at gunpoint but admits that he knocked Plaintiff's phone from his hand and that Defendant Vecchio handcuffed Plaintiff.**

37. When Tommie asked, "why the fuck would y'all just do that," Defendant Donnelly told him, "shut the fuck up."

**ANSWER: Defendant City admits the allegations in this paragraph.**

38. Tommie called Defendant Donnelly a bitch, to which Defendant Donnelly responded, "I'll show you a bitch."

**ANSWER: Defendant City admits the allegations in this paragraph.**

39. Defendant Donnelly then walked from the driver's side of the vehicle to the passenger side so that he could hit a handcuffed Tommie in his stomach.

**ANSWER: Defendant City denies the allegations in this paragraph.**

40. Defendant Vecchio took Tommie away from the vehicle and asked him if he had anything on him. Tommie answered, "Yeah, I got my gun on me and I'm FOID."

**ANSWER: Defendant City admits the allegations in this paragraph.**

41. Defendant Vecchio retrieved Plaintiff's weapon from where Tommie directed him.

**ANSWER: Defendant City admits that Defendant Vecchio retrieved Plaintiff's weapon but denies that Plaintiff directed him to do so.**

42. Tommie told the Defendants they can retrieve his wallet out of his pants pocket so that he can show them he's licensed to lawfully carry. Instead, he was placed in a police vehicle and taken back to the police station.

**ANSWER: Defendant City admits the allegations in this paragraph.**

43. At all times relevant, Tommie's wallet was in his pants pocket and it contained is FOID/CCL card.

**ANSWER: Defendant City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

44. Despite that, Defendants charged Tommie with allegedly failing to disclose his firearm.

**ANSWER: Defendant City admits that Plaintiff was charged with failing to disclose his concealed firearm pursuant to 430 ILCS 66.0/10-H, and denies any remaining allegations contained in this paragraph.**

45. Defendant Officers then had the vehicle unnecessarily towed.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

46. After Tommie was taken back to the station, Defendant Donelly came back to his holding cell to taunt him, rejoicing over the fact that he, "finally got him."

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

47. On 16 January 2024, all the charges against Mr. Hendrick were dismissed in a manner consistent with his innocence.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

48. The acts of Defendant Officer were intentional, willful and wanton.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

49. As a direct and proximate result of the unlawful actions of the defendants, Plaintiff was injured, including physical injuries, pain and suffering, humiliation, embarrassment, fear, emotional trauma, mental anguish, the deprivation of their constitutional rights and dignity, interference with a normal life, lost time, and attorneys' fees.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

### COUNT I: 42 U.S.C. § 1983 – Fourth and Fourteenth Amendment

50. Plaintiff re-alleges the above paragraphs as though fully set forth herein.

**ANSWER: Defendant City incorporates its answers to the previous paragraphs.**

51. The search, seizure, use of force against, and detainment of Plaintiff's person and property performed willfully and wantonly by Defendant Officers based upon false and fabricated evidence, as detailed above, were unreasonable and in violation of Plaintiff's rights under the Fourth and Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. §1983.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

52. As a direct and proximate result of the above-detailed actions of the defendants, Plaintiff was injured.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

## COUNT II: 42 U.S.C. § 1983 – First Amendment Retaliation

53. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

**ANSWER: Defendant City incorporates its answers to the previous paragraphs.**

54. Plaintiff exercised his First Amendment rights.

**ANSWER: The allegations contained in this paragraph state a legal conclusion which no response is necessary.**

55. Plaintiff's exercise of his First Amendment rights is a constitutionally protected activity, including recording the police and petitioning the government for redress of his grievances.

**ANSWER: The allegations contained in this paragraph state a legal conclusion which no response is necessary.**

56. Defendant Officers retaliated against Plaintiff because he exercised his First Amendment rights.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

57. Spreading false rumors, arresting someone, and charging them with a crime they did not commit for exercising his or her constitutional right will deter others from taking part in this protected activity.

**ANSWER: The allegations contained in this paragraph state a legal conclusion which no response is necessary.**

58. As a direct and proximate result of the malicious actions of Defendant Officers, Plaintiff was injured, including, but not limited to, embarrassment, humiliation, the deprivation of her constitutional rights and dignity, damage to her reputation, interference with her normal life, severe emotional distress, and pain and suffering.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

### COUNT III: 42 U.S.C. § 1983 – Failure to Investigate and Discipline

59. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

**ANSWER: Defendant City incorporates its answers to the previous paragraphs.**

60. Defendant Officers regularly harass citizens by engaging in pretextual stops, writing false tickets, and illegally towing vehicles.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

61. Plaintiff and others have filed numerous complaints against Defendants Officers for their misconduct.

**ANSWER: Defendant City admits Defendants Officers have received complaints against them for alleged misconduct.**

62. Despite that, Defendant City has failed to adequately investigate or discipline the Defendant Officers for their misconduct.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

63. This has emboldened the Defendants to continue to engage in egregious, escalating misconduct.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

64. For instance, two complaints that Tommie filed were submitted as completed investigations despite the fact he was never even interviewed about what occurred by the investigating officer.

**ANSWER: Without more details of the alleged "complaints," Defendant City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

65. Upon information and belief, the accountability sergeant recommended findings in support of the accused officers that cleared them of wrongdoing.

**ANSWER: Without more details of the alleged "complaints," Defendant City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

10

66. In this way, Defendant Officers and others are aware that even when their gross misconduct is caught on camera, they will not be held accountable for their actions.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

67. For example, after the events complained of here, Defendant Donnelly has been video recorded pointing his weapon at a person's head and threatening to kill them.

**ANSWER: Without more details of the alleged incident, Defendant City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

68. Thus, the constitutional violations detailed above were caused by the customs, policies, and practices of the defendants, as promulgated, enforced, and disseminated by the City of Chicago, the Mayor of Chicago, the Chicago City Council, members of the Chicago City Council, the Chicago Police Department, and members of the Chicago Police Department, whereby those charged with ensuring compliance with the Constitution of the United States, in this case and many other cases, instead deliberately, willfully, and wantonly encourage the infliction of physical and psychological injuries onto the citizens of Chicago.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

69. Chicago policymakers acted willfully, wantonly, and with deliberate indifference toward the constitutional rights of Plaintiff by accepting, monitoring, maintaining, protecting, and encouraging the unconstitutional policies, practices, and customs listed in this Complaint.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

70. By acting willfully, wantonly, and deliberately indifferent towards the constitutional rights of Plaintiff, Chicago policymakers approved, encouraged, and caused the constitutional violations alleged in this Complaint.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

71. As a proximate result of the above-detailed actions of the Defendants and Chicago policymakers, Plaintiff was injured, including injuries resulting from the above-detailed constitutional violations, pain, suffering, anguish, embarrassment, emotional injuries, psychological injuries, physical injuries, and permanent injuries. In addition, the violations proximately caused Plaintiff great humiliation, exposed him to public scandal and disgrace, and caused him to incur various expenses, all to his damage.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

84618\324457694.v2

### COUNT IV: 745 ILCS 10/9-102 – Indemnification

72. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

**ANSWER: Defendant City incorporates its answers to the previous paragraphs.**

73. Defendant City is the employer of the Defendant Officers.

**ANSWER: Defendant City admits that it was the employer of Defendant Officers at all relevant times.**

74. The individually-named defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the Defendant City.

**ANSWER: Defendant City admits the Defendant Officers were acting under color of law and in the scope of their employment as employees of the Defendant City at all relevant times, but denies any remaining allegations contained in this paragraph and denies any misconduct or wrongdoing.**

### COUNT IV: Intentional Infliction of Emotional Distress

75. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

**ANSWER: Defendant City incorporates its answers to the previous paragraphs.**

76. The above-detailed conduct by Defendant Officers was extreme and outrageous, exceeding all bounds of human decency.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

77. Defendants Officers performed the acts detailed above with the intent of inflicting severe emotional distress or with knowledge of the high probability that the conduct would cause such distress.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

78. Defendant City is sued in this to the doctrine of *respondeat superior*, in that Defendant Officers performed the actions complained of while on duty and/or in the employ of Defendant City, and while acting within the scope of their respective employment.

**ANSWER: Defendant City admits that Plaintiff purportedly brings a claim for *respondeat superior* in this count, and admits the Defendant Officers were on duty and/or in the employ**

84618\324457694.v2

**of the Defendant City at all relevant times. Defendant City further admits the Defendants Officers were acting in the scope of their employment as employees of the Defendant City at all relevant times. Defendant City denies any remaining allegations contained in this paragraph and any misconduct or wrongdoing.**

79. As a direct and proximate result of this conduct, Plaintiff did, in fact, suffer severe emotional distress, resulting in injury to his mind, body, and nervous system, including loss of sleep, mental anguish, and excruciating physical pain and emotional suffering.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

## COUNT V: Malicious Prosecution

80. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

**ANSWER: Defendant City incorporates its answers to the previous paragraphs.**

81. By the actions detailed above, Defendant Officers knowingly sought to and did in fact maliciously prosecute Plaintiff on false charges for which they knew there was no probable cause.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

82. Defendant City is sued in this Count pursuant to the doctrine of *respondeat superior*, in that Defendant City performed the actions complained of while on duty and/or in the employ of Defendant City, and while acting within the scope of this employment.

**ANSWER: Defendant City admits that Plaintiff purportedly brings a claim for *respondeat superior* in this count, and admits the Defendant Officers were on duty and/or in the employ of the Defendant City at all relevant times. Defendant City further admits Defendants Officers were acting in the scope of their employment as employees of the Defendant City at all relevant times. Defendant City denies any remaining allegations contained in this paragraph and any misconduct or wrongdoing.**

83. As a direct and proximate result of the malicious prosecution, Plaintiff was damaged, including the value of his lost liberty, exposure to public scandal and disgrace, damage to his reputation, mental and emotional suffering, humiliation, embarrassment, and anguish.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

**AFFIRMATIVE DEFENSES**

NOW COMES Defendant City of Chicago, by and through its attorneys, Hinshaw & Culbertson LLP, and states the following Affirmative Defenses:

1. **745 ILCS 10/2-102**

The Illinois Tort Immunity Act provides as follows: "A local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." 745 ILCS 10/2-102. Accordingly, under Illinois law, the City of Chicago is immune from punitive or exemplary damages awards for the claims alleged under state law. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

2. **745 ILCS 10/2-103**

The Illinois Tort Immunity Act provides as follows: "A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-203. Accordingly, the City of Chicago cannot be liable for the claims alleged under state law for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law.

3. **745 ILCS 10/2-109**

The Illinois Tort Immunity Act provides as follows: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Accordingly, the City of Chicago cannot be liable for the claims alleged under state law for an injury resulting from an act or omission of its employee where the employee is not liable.

4. **745 ILCS 10/2-201**

Defendant City is not liable for the claims alleged under state law because Defendant officers are immune from liability on Plaintiff's state law claims because their decisions as to what actions to take were discretionary decisions for which they are immune from liability. 745 ILCS 10/2-201.

5. **745 ILCS 10/2-202**

Defendant City is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202. Here, Defendant City is immune from liability on Plaintiff's state law claims because they were public employees executing and enforcing the law and Plaintiff cannot prove their conduct was willful and wanton.

6. **745 ILCS 10/2-204**

Defendant City is not liable for the claims alleged under state law because individual defendants are not liable under state law for any injury caused by the act or omission of another person. 745 ILCS 10/2-204. Here, Defendant City is immune from liability on Plaintiff's state law claims for any claimed injuries or damages that were caused by the acts or omissions of other individuals.

7. **Attorney's Fees**

Plaintiff is not entitled to attorney's fees for any state law claims. *See Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.*, 882 F.2d 221, 227 (7th Cir. 1989); *Kerns v. Engelke*, 76 Ill.2d 154, 166 (1979); *Miller v. Pollution Control Board*, 267 Ill. App.3d 160, 171 (4th Dist. 1994).

8. **Punitive Damages**

The City of Chicago is immune from the imposition of punitive damages under federal law. Punitive damages cannot be imposed against a municipality in a §1983 action. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

9. **Failure to Mitigate Damages**

Plaintiff had a duty to mitigate his injuries or damages, and any injuries or damages awarded to Plaintiff would be required to be reduced by any amount by which the damages could have been lessened by Plaintiff's failure to take reasonable action to minimize those damages.

10. **Contributory Fault**

Pursuant to 735 ILCS 5/2-1116(c) (2015), if Plaintiff was more than 50 percent (50%) of the proximate cause of the injuries or damage for which he seeks recovery, Plaintiff is barred from any recovery. If Plaintiff's contributory fault was less than 50 percent (50%) of the proximate cause of the alleged injuries or damage for which he seeks recovery, then any economic or noneconomic damages allowed shall be diminished by the percentage of Plaintiff's contributory fault assessed by the trier of fact to have proximately caused, in whole or in part, the alleged injuries or damage for which Plaintiff seeks recovery.

11. **No *Monell* Claim.**

A governmental entity is liable for damages under § 1983 only if the plaintiffs can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *See Monell v. Department of Social Serv.*, 436 U.S. 658, 692 (1978). The City is not liable to Plaintiff for any federal claim for which its employees or agents are not liable to Plaintiff. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

## **JURY DEMAND**

Defendant CITY OF CHICAGO respectfully requests a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

WHEREFORE, based on the foregoing, Defendant CITY OF CHICAGO respectfully request that this Honorable Court grant judgment in its favor and against the Plaintiff on all aspects of the Complaint, and further requests that this Honorable Court grant it fees, costs, and such other relief that this court deems just and appropriate.

                                              Respectfully Submitted,

                                              HINSHAW & CULBERTSON,

                                              */s/ Vincent M. Rizzo*
                                              Vincent M. Rizzo
                                              Attorney for City of Chicago

Vincent M. Rizzo
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Phone: 312-704-3000
Fax: 312-704-3001
vrizzo@hinshawlaw.com

**CERTIFICATE OF SERVICE**

      I certify that on April 11, 2025, I served the foregoing document upon all counsel of record by filing same with the Clerk of the Northern District of Illinois using the Court's electronic filing system.

                                                                                  */s/ Vincent M. Rizzo*