THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TOMMIE HENDRICK JR., | ) | |
| | ) | No.  24 C 867 |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Tommie Hendrick, Jr. filed this 42 U.S.C. § 1983 action alleging multiple constitutional rights and state law violations by Chicago Police Officers ("CPD") Michael Donnelly, Richard Rodriguez, and Joseph Vecchio (the "Defendant Officers") and the City of Chicago (the "City"). The City now moves to bifurcate and stay discovery on Hendrick's *Monell*[1] claims. (Dkt. 58 at 1). The City also asks the Court to enter its proposed "Limited Consent to Entry of Judgment Against Defendant City of Chicago." (*Id.*); (Ex. E, Dkt. 58-5). For the reasons set forth below, the City's Motion to Bifurcate and Stay Discovery and Trial on Plaintiff's *Monell* Claims [58] is granted.

## BACKGROUND

The following factual overview is taken from Hendrick's Amended Complaint, (Dkt. 26), and is presumed true only for purposes of resolving the current motion. *See, e.g.*, *Veal v. Kachiroubas*, 2014 WL 321708, at *1 n.2 (N.D. Ill. Jan. 29, 2014). Hendrick alleges that, in August 2019, he was stopped, threatened, attacked, and verbally accosted by CPD officers. (Dkt. 26 at ¶¶ 8-10). After bringing and settling a case against those officers, Hendrick began documenting police

---

[1] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

conduct in his neighborhood. (*Id.* at ¶¶ 11-12). Because of this, he asserts, Defendants Donnelly and Rodriguez harassed and abused him. (*Id.* at ¶ 13). Hendrick alleges that Defendants Donnelly and Rodriguez spread rumors that he is a police informant and have twice called him a "snitch." (*Id.* at ¶¶ 14-15). Hendrick filed complaints against Defendants Donnelly and Rodriguez. (*Id.* at ¶ 16). On December 21, 2023, Hendrick spoke to the CPD Bureau of Internal Affairs about scheduling an interview regarding his allegations. (*Id.* at ¶ 17).

On December 26, 2023, Defendant Officers arrested Hendrick for failing to disclose a firearm. (*Id.* at ¶ 47). Hendrick and his girlfriend were in his girlfriend's parked car when Defendant Officers drove past it. (*Id.* at ¶¶ 18-19). Hendrick alleges that Defendant Officers then seized his girlfriend's vehicle and initiated a traffic stop without reasonable and articulable suspicion. (*Id.* at ¶ 20). As the Defendant Officers approached the vehicle, Defendant Rodriguez warned Defendant Vecchio that Hendrick would record their interaction and that they "got a beef last time because of him." (*Id.* at ¶ 22). Hendrick recorded a video on his cellphone as Defendant Rodriguez knocked on the front passenger window and Defendant Vecchio shined a flashlight through the back window. (*Id.* at ¶¶ 23-26). Defendant Vecchio stated that he saw a gun holster; Hendrick asserts that there was no gun visible or in the gun holster. (*Id.* at ¶¶ 26-27). Defendant Donnelly then told Hendrick's girlfriend, who was in the driver's seat, to get out of the car while he and Defendant Vecchio pointed their weapons at the car. (*Id.* at ¶¶ 28-29). When he was unable to open the locked front doors, Defendant Vecchio tried to break the front driver's side door with a flashlight. (*Id.* at ¶¶ 30-31). Defendant Officers then ordered Hendrick and his girlfriend to exit the car while pointing their guns at them. (*Id.* at ¶¶ 32-33).

Hendrick exited the car with his hands raised, holding his cellphone in his left hand. (*Id.* at ¶ 35). Defendant Rodriguez knocked Hendrick's phone out of his hand, and Defendant Vecchio

handcuffed him. (*Id.* at ¶ 36). After Hendrick called Defendant Donnelly a "bitch," Defendant Donnelly hit him in his stomach. (*Id.* at ¶¶ 38-39). Hendrick told Defendant Vecchio he had a gun and that he was a Firearm Owners Identification ("FOID") card holder. (*Id.* at ¶ 40). Defendant Vecchio retrieved Hendrick's gun, and Defendant Officers then took Hendrick to the police station. (*Id.* at ¶¶ 41-42). Hendrick alleges that he was charged with failing to disclose his firearm even though he offered to show Defendant Officers his FOID card. (*Id.* at ¶¶ 42-43). Defendant Officers also had Hendrick's girlfriend's car towed. (*Id.* at ¶ 45). Hendrick asserts that, while he was in a holding cell, Defendant Officers told him that they "finally got him." (*Id.* at ¶ 46).

On January 16, 2024, all charges against Henrick were dismissed. (*Id.* at ¶ 47). Hendrick asserts that because of Defendant Officers' misconduct, he suffered physical injuries, pain and suffering, humiliation, embarrassment, fear, emotional trauma, mental anguish, the deprivation of his constitutional rights and dignity, interference with a normal life, lost time, and attorney's fees. (*Id.* at ¶ 49). Hendrick now brings this six-count lawsuit alleging: (1) a Fourth and Fourteenth Amendment claim under § 1983 against Defendant Officers for their unreasonable search, seizure, use of force against, and detainment of Hendrick and his property; (2) a First Amendment retaliation claim under § 1983 against Defendant Officers; (3) a *Monell* claim against the City for its policies or practices that caused the Defendant Officers' constitutional violations; (4) indemnification by the City for Defendant Officers' conduct; (5) an intentional infliction of emotional distress against Defendant Officers; and (6) a malicious prosecution claim against Defendant Officers. (Dkt. 26 at ¶¶ 50-83). The City now moves to bifurcate Hendrick's *Monell* claims from his claims against the Defendant Officers; stay discovery and postpone trial as to the *Monell* claims until the claims as to the Defendant Officers are resolved; and enter the City's

proposed "Limited Consent to Entry of Judgment Against Defendant City of Chicago" (Limited Consent Agreement). (Dkt. 58 at 1).

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 42(b), the Court has discretion to separate claims or issues for trial if the separation would prevent prejudice to a party or promote judicial economy. Fed. R. Civ. P. 42(b); *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (citing *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999)). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment," which guarantees a jury trial for civil cases in federal court. *Chlopek*, 499 F.3d at 700 (citing *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000)). Federal Rule of Civil Procedure 26(d) also permits a court to stay discovery on *Monell* claims. Fed. R. Civ. P. 26(d); *see also, e.g.*, *Horton v. City of Chicago*, 2016 WL 316878, at *2 (N.D. Ill. Jan. 26, 2016); *Saunders v. City of Chicago*, 146 F. Supp. 3d 957, 968 (N.D. Ill. 2015).

Motions for bifurcation are "now commonplace," and "there is a growing body of precedent in this district for both granting and denying bifurcation in § 1983 cases." *See, e.g.*, *Allison v. Gallagher*, 2012 WL 4760863, at *1 (N.D. Ill. Oct. 5, 2012) (quoting *Elrod v. City of Chicago*, 2007 WL 3241352, at *2 (N.D. Ill. Nov. 1, 2007)); *see also, e.g.*, *Rodriguez v. City of Chicago*, 2018 WL 3474538, at *2 (N.D. Ill. July 19, 2018). "Such motions and the inclination of many judges to grant them stems in large part from the recognition that, often, 'claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.'" *See Horton*, 2016 WL 316878, at *2 (quoting *Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007)); *see also, e.g.*, *Peterson v. City of Chicago*, 2015 WL 13882813, at *2 (N.D. Ill.

4

Oct. 19, 2015); *Allison*, 2012 WL 4760863, at *1. Deciding whether to bifurcate a plaintiff's *Monell* claim is left to the Court's sound discretion and "must be done on case-by-case basis, looking at the specific facts and claims presented." *See, e.g.*, *Rodriguez*, 2018 WL 3474538, at *2; *see also Estate of Loury by Hudson v. City of Chicago*, 2017 WL 1425594, at *2 (N.D. Ill. Apr. 20, 2017).

## DISCUSSION

The City argues bifurcation and staying of Hendrick's *Monell* claims are appropriate because bifurcation best serves the interests of efficient litigation and judicial economy, will assist in eliminating the risk of unfair prejudice to the Defendants, and will not prejudice Hendrick's ability to recover compensatory damages. (*See generally* Dkt. 58). In support of its Motion, the City argues that the viability of Hendrick's *Monell* claims depends on the success of his claims against the Defendant Officers. (*Id.* at 9-11). The City has offered to consent to limited entry of judgment against it should the jury determine the Defendant Officers committed a violation of Hendrick's constitutional rights, even if the Officers are protected from civil liability due to qualified or absolute immunity. (Dkt. 58 at 11-12); (Ex. E, Dkt. 58-5). According to the City, the Limited Consent Agreement would render discovery and trial on the *Monell* claims unnecessary and benefit Hendrick because he would not be required to prove the elements of § 1983 municipal liability. (*Id.*).

### I.    Split or Inconsistent Verdicts

The City argues that bifurcation is appropriate because Hendrick must succeed in his action against the Defendant Officers before he can obtain a judgment against the City on his *Monell* claims.  (Dkt. 58 at 10). Where a plaintiff's alleged harm "was not caused by any *de facto* policies independent of any officer's actions," a constitutional violation by an individual officer must be

found before a municipality may be held liable under *Monell. See, e.g.*, *Harris v. City of Chicago*, 2016 WL 3261522, at *3 (N.D. Ill. June 14, 2016); *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1080–81 (N.D. Ill. 2018). Under certain circumstances, "a municipality can be held liable under *Monell* even when its agents are not," although this is only possible where such a finding would not create an "inconsistent verdict." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010)). To determine whether the City's liability is dependent on that of the Defendant Officers', the Court "must look to the nature of the constitutional violations, the theory of municipal liability and the defenses set forth." *Thomas*, 604 F.3d at 305.

Applying those factors here, Hendrick asserts constitutional violations under the Fourth and Fourteenth Amendments based on the Defendant Officers' search, seizure, use of force against, and detainment of Hendrick and his property. (Dkt. 26 at ¶¶ 51-52). He also asserts a First Amendment violation based on Defendant Officers' alleged retaliation against him for recording the police and filing complaints against them. (*Id.* at ¶¶ 53-58). Liberally construing Hendrick's *Monell* claims against the City, he asserts that the City has a custom, policy, or practice of failing to adequately investigate or discipline police officers for their misconduct. (Dkt. 58 at ¶¶ 59-68). He argues that Defendant Officers "regularly harass citizens by engaging in pretextual stops, writing false tickets, and illegally towing vehicles," but have not been investigated or disciplined despite Hendrick and others filing complaints against them. (*Id.* at ¶¶ 60-62). He further asserts that investigations into two of his complaints against Defendant Officers were completed without him being interviewed and that Defendant Officers were cleared of wrongdoing by "the accountability sergeant." (*Id.* at ¶¶ 64-65). Additionally, he claims that, after the events at issue here, Defendant Donnelly was recorded pointing his weapon at someone's head and threatening to kill them. (*Id.* at ¶ 67). Hendrick argues that the City's customs, policies, and practices relating

6

to investigations and discipline caused the constitutional violations committed by the Defendant
Officers. (*Id.* at ¶ 68).

Even accepting Hendrick's claims as true, any harm caused by a policy or practice not to
investigate or discipline officer misconduct could only manifest itself through the Defendant
Officers actually engaging in misconduct. *See, e.g., Treadwell v. Salgado*, 2022 WL 267988, at *4
(N.D. Ill. Jan. 28, 2022) ("[T]he City's purported failure to supervise police force does not
proximately cause harm to the public in and of itself."); *Ezell v. City of Chicago*, 2019 WL
3776616, at *4 (N.D. Ill. Aug. 12, 2019) (harm caused by City's alleged failure to properly train,
discipline, or supervise officers could only manifest itself through officer's actions); *Claxton v.
City of Chicago*, 2015 WL 5304630, at *1 (N.D. Ill. Sept. 9, 2015) (same regarding City's alleged
policies of failing to adequately train, supervise, and discipline officers). Therefore, the City cannot
be found liable under *Monell* unless Hendrick proves that one or more of the Defendant Officers
committed a constitutional violation under § 1983 as alleged in Counts I and II. *See, e.g., Williams*
214 F. Supp. 3d at 1080–81; *Treadwell*, WL 267988, at *4.

Hendrick asserts that his *Monell* claim against the City can survive without finding the
Defendant Officers' individually liable. (Dkt. 62 at 6-8). The cases Hendrick cites in support of
his position are not persuasive. The court in *Awalt v. Marketti* declined to bifurcate *Monell* claims
after finding a split verdict may result, but the case presented significantly different facts than what
are present here. *Awalt v. Marketti*, 2012 WL 1161500, at *11 (N.D. Ill. Apr. 9, 2012) (plaintiff
alleged individual defendants were deliberately indifferent to his medical condition and municipal
defendants promulgated policies or customs that created unconstitutional prison conditions).
Additionally, courts in three cases cited by Hendrick found that *Monell* claims were not dependent
on proving individual liability because the individual defendants were asserting qualified

immunity defenses. *Id.* at *12; *Trexler v. City of Belvidere*, 2021 WL 493039, at *3 (N.D. Ill. Feb. 10, 2021); *Est. of McIntosh v. City of Chicago*, 2015 WL 5164080, at *8 (N.D. Ill. Sept. 2, 2015). The Court, however, agrees with the widely held opposing view that the possibility of a successful qualified immunity defense does not preclude bifurcation. *See, e.g.*, *Williams*, 315 F. Supp. 3d at 1081 (In deciding whether bifurcation is appropriate, "whether the Officers can be found liable is beside the point; rather, the issue is 'whether the individual defendants committed a constitutional violation that is a prerequisite for' the City's liability."); *Ezell*, 2019 WL 3776616, at *4 (the fact that Defendant Officers asserted immunity defenses was not relevant to bifurcation analysis because "the question is whether the Officers committed the constitutional violation(s) underlying Plaintiffs' *Monell* claims, not whether they can be held liable for them."); *Tate v. City of Chicago*, 2021 WL 4400982, at *1 (N.D. Ill. Sept. 27, 2021) (bifurcating *Monell* claims after holding that "even if the individual officers can avoid liability through qualified immunity. . . their actions still must be constitutionally excessive for the City to face liability.").

The City cannot be found liable under *Monell* unless the Defendant Officers are found to have committed a constitutional violation, regardless of whether they are shielded from liability. Accordingly, this factor weighs in favor of bifurcation.

## II. Efficient Litigation and Judicial Economy

The parties also dispute whether bifurcation will promote judicial economy. The City argues that allowing the *Monell* claim to proceed will lead to, among other things, costly fact discovery, judicial intervention in discovery disputes arising from the *Monell* claim-discovery, briefing and ruling on a summary judgment motion, and a trial that "will be longer and more factually and legally complex than a trial that would focus solely on the Defendant Officers' liability." (Dkt. 58 at 6-8). The City provides a detailed estimate of the type and amount of

8

discovery that litigating the *Monell* claims will require: (1) extensive written discovery requests regarding various broad topics including training, discipline, complaint histories of non-defendant officers, investigatory files, CPD customs and procedures; (2) depositions of current and former CPD personnel and witnesses from other agencies, such as the Mayor's Office and the Civilian Office of Police Accountability; and (3) expert reports and depositions. (Dkt. 58 at 7-8). The City points out that Hendrick has already issued *Monell* discovery, including extensive requests for production[2] and a Rule 30(b)(6) deposition notice for ten broad topics. (*Id.* at 2-3); (Ex. A, Dkt. 58-1); (Ex. B, Dkt. 58-2); (Ex. C, Dkt. 58-3). As such, the City maintains that bifurcating and staying the *Monell* claims allows the parties to avoid extensive, complex, time-consuming, and costly discovery, motion practice, and trial that may be ultimately prove unnecessary. (Dkt. 58 at 6-8).

Hendrick counters that bifurcation would "multiply the proceedings, impose huge costs on the Court and the parties, and inconvenience the witnesses." (Dkt. 62 at 6). To support this, he claims that bifurcation would require two rounds of discovery, two separate stages of dispositive motions briefing, two periods of pre-trial preparation, and ultimately two jury trials. (*Id.* at 7). This argument fails for the reasons discussed above. Hendrick's *Monell* claims are dependent on his establishing the liability of the Officers, and the City has offered a Limited Consent Agreement[3]

---

[2] Hendrick has requested the following: all traffic and investigatory stops for CPD's 18th District from 2019 to 2015; all training materials for instructing BIA investigators; all training materials for instructing COPA investigators; a copy of all investigations into misconduct allegations into 18th District officers from 2019 to 2025; all records identifying any 18th District police officer who has been sent or recommended for additional training due to work-related issues from 2019 to 2025; and records indicating the allegations, officers involved, and outcome of all investigations into all allegations of misconduct against a police officer from 2019 to 2025. (Dkt. 58 at 2-3); Ex. A, Dkt. 58-1); (Ex. B, Dkt. 58-2).
[3] Hendrick contends that the City's proffered Limited Consent Agreement should be disregarded because it is not authorized by the Federal Rules of Civil Procedure. (Dkt. 62 at 12). The case he relies on in support found that the District Court incorrectly threated the agreement in that case as though it were a Rule 68 offer of judgment. *Swanigan v. City of Chicago*, 775 F.3d 953, 960 (7th Cir. 2015). The Court recognizes that the Limited Consent Agreement is not a Rule 68 offer of judgment; rather, as the City points out in its briefing, the Consent is an agreement to accept judgment if the jury finds any individual defendant liable. (*See* Dkt. No. 58 at 2 n. 2). Such agreements have been considered and accepted by other courts. *See e.g.*, *Saunders*, 146 F. Supp. 3d at 970.

that awards damages to Hendrick in the event that the Officers are found to have violated his constitutional rights, regardless of any immunity arguments. Other courts, including this one, have found bifurcation warranted on efficiency grounds under the same circumstances. *See, e.g., Treece v. Hochstetler*, 213 F.3d 360, 361, 365 (7th Cir. 2000); *Williams*, 315 F. Supp. 3d at 1083; *Ezell*, 2019 WL 3776616 at *4; *Treadwell*, 2022 WL 267988 at *6. Accordingly, first addressing the individual claims may eliminate the need to proceed to the *Monell* claims at all, which promotes judicial economy by avoiding significant discovery and proceeding with a shorter trial. *See, e.g.*, *Ezell*, 2019 WL 3776616, at *5–6; *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000). Bifurcation may also significantly expedite litigation of the individual claims themselves. Instead of litigating broad questions about the City's disciplinary policies, for example, the parties can focus on establishing what happened to Hendrick during his interaction with Defendant Officers and whether it violated his constitutional rights. "By limiting the scope of this stage of litigation, it is possible to resolve requisite threshold issues more quickly." *Ackerman v. Allen*, No. 16-cv-6199, 2017 WL 1536447, at *5 (N.D. Ill. Apr. 27, 2017).

Hendrick also argues that there is overlap of discovery essential to the individual claims and the municipal claim, which makes bifurcation unnecessary and will create discovery disputes and require duplicative efforts. (Dkt. 62 at 6-7). For these arguments to succeed, Hendrick must sufficiently explain how discovery related to whether the Defendant Officers unlawfully detained and arrested him, used excessive force, or retaliated against him overlaps significantly with discovery into the much broader issue of whether the City has a practice of inadequately investigating and disciplining officers. *See Andersen v. City of Chicago*, 2016 WL 7240765, at *5 (N.D. Ill. Dec. 14, 2016); *Williams*, 315 F. Supp. 3d at 1082-83. Hendrick merely makes the broad assertion that evidence of a municipal policy or practice is probative of whether an individual

10

defendant engaged in a particular course of conduct consistent with those policies on a particular occasion. (Dkt. 82 at 8). He does not, however, explain how any specific evidence in this case may overlap. Accordingly, the Court rejects these arguments. For these reasons, efficiency and economy counsel in favor of bifurcation.

### III. Prejudice

Having found that the bifurcation promotes judicial economy, it is appropriate as long as it will not prejudice the non-moving party or violate the Seventh Amendment. *Anderson*, 2016 WL 7240765, at *5 (citing *Treece*, 213 F.3d at 365). The City argues that bifurcation of the *Monell* claims prevents unfair prejudice at trial to the Defendant Officers and the City. This is likely true for the reasons stated in *Bradford v. City of Chicago*, 2019 WL 5208852, at *3-4 (N.D. Ill. Oct. 16, 2019). The Court does not need to address this issue in detail, however, because the Court finds that the efficiencies produced by staying *Monell* discovery and trial are sufficient alone to justify bifurcation. *See Tate,* 2021 WL 4400892, at *3; *see also Lyons v. City of Chicago*, 2023 WL 2390364, at *3 (N.D. Ill. Mar. 7, 2023) ("Because one of Rule 42(b)'s criteria for bifurcation— avoidance of prejudice—is satisfied, the Court is not obligated to address judicial economy and efficiency."); *Chlopek*, 499 F.3d at 700 (If "one of [Rule 42(b)'s] criteria is met, the district court may order bifurcation....").

The Court must consider, however, whether bifurcation prejudices Hendrick. *Chlopek*, 499 F.3d at 700. Hendrick argues that, because his claims are "interwoven," he would face unreasonable hardship in having to prove the same facts at two trials. (Dkt. 62 at 11). He also claims that bifurcation would cause delays in the final resolution of his claims, drive up the costs of litigation, and lead to discovery disputes about what constitutes "*Monell*-only" discovery. (*Id.*). The Court rejected these arguments when it determined that bifurcation would promote judicial

economy. Based upon those findings and the fact that numerous courts have found that bifurcation allows parties to bypass burdensome and potentially unnecessary litigation and related costs, the Court finds that bifurcation would not prejudice Hendrick. *See, e.g.*, *Andersen*, 2016 WL 7240765, at *5; *Medina*, 100 F. Supp. 2d at 895; *Moore*, 2007 WL 3037121, at *9.

Finally, Hendrick argues that he has strong, non-economic interests in bringing his claims that would be frustrated by bifurcation. (Dkt. 62 at 5). He wants to prevent "continued and future constitutional violations" and "change the nature of police interactions with its citizens." (*Id.* at 5-6). He further asserts that the Limited Consent Agreement operates as a dismissal of his *Monell* claims and does not address his non-economic concerns because it asserts that the City denies any unconstitutional practices. (*Id.* at 12). First, the Limited Consent Agreement is not "a roundabout way of seeking dismissal." (Dkt. 62 at 12). As the Seventh Circuit has held, even after plaintiffs have obtained their damages, they are permitted to pursue injunctive relief regarding policies or practices identified in *Monell* claims. See *Swanigan*, 775 F.3d at 962. Hendrick does not disagree with the City's claim that bifurcation would not prevent him from pursuing any claims against the City that may remain after resolution of the individual claims and application of the Limited Consent Agreement. (Dkt. 58 at 14).

Second, while Hendrick assuredly has strong reasons for wanting to pursue his *Monell* claims, he seeks only monetary damages from the City in this action. (Dkt. 26 at 7-12). Pursuant to the Limited Consent Agreement, the City will pay any compensatory damages awarded to Hendrick, along with attorneys' fees. (Ex. E, Dkt. 58-5). The Court acknowledges that Section 1983 claims are intended not only to compensate victims for past wrongs but also to deter future constitutional deprivations. *Owen v. City of Independence*, 445 U.S. 622, 651 (1980). Hendrick, however, fails to show that a judgment entered in this case against the City via the Limited Consent

Agreement would *not* adequately deter against future misconduct. *See, e.g.*, *Williams*, 315 F. Supp. 3d at 1084 ("[Plaintiff's] complaint does not limit any extraordinarily large judgment to his *Monell* claim; instead, it is entirely possible that [he] could be awarded a large judgment against the Officers, which presumably send the same message to the City and police department."); *Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 935 (N.D. Ill. Nov. 8, 2012) (explaining that compensatory damages may lead the City "to feel an incentive to change"); *Parker v. Banner*, 479 F. Supp. 2d 827, 829 (N.D. Ill. 2007) ("If a constitutional violation occurred, then the City pays. . . . [T]hat is all *Owen* requires. The idea that the Supreme Court requires some extra incentive to deter cities from allowing their employees to violate rights is inconsistent with its policy of immunizing cities from punitive damages."). This is not to minimize Hendrick's desired non-economic benefit from bringing suit against the City. But, approaching the City's motion with a "pragmatic mindset," as the Court must at this stage of the litigation, bifurcation is appropriate in this case. *See, e.g.*, *Allison*, 2012 WL 4760863, at *1.

## CONCLUSION

For the reasons stated above, the City's motion to bifurcate Hendrick's *Monell* claims, stay discovery and trial on those claims, and enter the City's proposed Limited Consent [58] is granted.

Virginia M. Kendall
United States District Judge

Date: November 19, 2025

13